IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

NORMAN WASHINGTON WILLIAMS,

    Plaintiff,                    No. CIV S-04-2291 FCD KJM P

    vs.

RICHARD SANDHAM, et al.,

    Defendants.               FINDINGS & RECOMMENDATIONS

        Plaintiff is a California prisoner proceeding pro se with an action for violation of civil rights under 42 U.S.C. § 1983. Defendant Rohlfing's May 19, 2006 motion for summary judgment is before the court.

I. Summary Judgment Standard

        Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

/////

/////

/////

/////

1  Under summary judgment practice, the moving party
2  always bears the initial responsibility of informing the district court
   of the basis for its motion, and identifying those portions of "the
3  pleadings, depositions, answers to interrogatories, and admissions
   on file, together with the affidavits, if any," which it believes
4  demonstrate the absence of a genuine issue of material fact.

5  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the
6  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary
7  judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers
8  to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,
9  after adequate time for discovery and upon motion, against a party who fails to make a showing
10 sufficient to establish the existence of an element essential to that party's case, and on which that
11 party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof
12 concerning an essential element of the nonmoving party's case necessarily renders all other facts
13 immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as
14 whatever is before the district court demonstrates that the standard for entry of summary
15 judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

16  If the moving party meets its initial responsibility, the burden then shifts to the
17 opposing party to establish that a genuine issue as to any material fact actually does exist.  See
18 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to
19 establish the existence of this factual dispute, the opposing party may not rely upon the
20 allegations or denials of its pleadings but is required to tender evidence of specific facts in the
21 form of affidavits, and/or admissible discovery material, in support of its contention that the
22 dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party
23 must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome
24 of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
25 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.
26 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On April 28, 2005, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

/////

II. Plaintiff's Allegations Against Defendant Rohlfing

In his complaint, plaintiff alleges that in July of 2000, he had his appendix removed. One month after returning to his prison housing unit, plaintiff was still having "problems" with his stomach. Plaintiff complained to defendant Rohlfing, a doctor, and others. In response to plaintiff's complaint, Rohlfing told plaintiff that his pain "is like a knee or a back pain which will not goes aways *[sic]* . . . ." Compl. at 3. Over the course of the next five months, plaintiff was in a lot of pain, lost 50 pounds and eventually was taken back to the hospital in February 2001. At the hospital, plaintiff had blood transfusions and surgery due to the fact that he had an infection caused by his ruptured appendix. Plaintiff concludes that Dr. Rohlfing, among others, "deliberately deny *[sic]* and refused me medical attention on numerous occasions." Id.[1]

On April 15, 2005, the court found that plaintiff's complaint states a claim upon which relief may be granted against defendant Rohlfing under the Eighth Amendment. See Docket No. 4.

III. Standard For Eighth Amendment Denial Of Medical Care Claim

The Eighth Amendment's prohibition of cruel and unusual punishment extends to medical care of prison inmates. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). In order to state a section 1983 claim for violation of the Eighth Amendment based on inadequate medical care, a prison inmate must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. The nature of a defendant's responses must be such that the defendant purposefully ignores or fails to respond to a prisoner's pain or possible

---

[1] Plaintiff and defendant Rohlfing ask that the court take judicial notice of plaintiff's complaint. Opp'n at 4 & Defs.' Mot. for Summ. J., Req. for Judicial Notice. However, neither party indicates why the court should take judicial notice. The request for judicial notice is denied. The court notes, however, that plaintiff's complaint is signed under the penalty of perjury. It is proper for the court to consider plaintiff's complaint, as it does here, as an affidavit for purposes of resolving defendant's motion for summary judgment. See Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995) ("A verified complaint may be used as an opposing affidavit under Rule 56.").

medical need in order for "deliberate indifference" to be established. McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled in part on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997). Deliberate indifference may occur when prison officials deny, delay, or intentionally interfere with medical treatment, or may be demonstrated by the way in which prison officials provide medical care. Id. at 1059-60. However, a showing of merely inadvertent or even negligent medical care is not enough to establish a constitutional violation. Estelle, 429 U.S. at 105-06; Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998). A difference of opinion about the proper course of treatment is not deliberate indifference nor does a dispute between a prisoner and prison officials over the necessity for or extent of medical treatment amount to a constitutional violation. See, e.g., Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

IV. Defendant's Arguments And Analysis

Among other things, defendant Rohlfing argues that he is entitled to immunity from suit. Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In determining whether a governmental officer is immune from suit based on the doctrine of qualified immunity, the court must answer two questions. The first is, taken in the light most favorable to the party asserting the injury, do the facts show the officer's conduct violated a constitutional right? Saucier v. Katz, 533 U.S. 194, 201 (2001) (also explaining the importance of resolving qualified immunity questions "at the earliest possible stage in litigation"). A negative answer ends the analysis, with qualified immunity protecting the defendant from liability. Id. If a constitutional violation occurred, a court must further inquire "whether the right was clearly established." Id. "If the law did not put the [defendant] on notice that [his] conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Id. at 202.

1       Defendant Rohlfing argues, among other things, that plaintiff cannot present
2 evidence indicating Rohlfing was deliberately indifferent to plaintiff's serious medical needs and,
3 therefore, he is entitled to qualified immunity. Mot. at 17-18.

4       Defendant Rohlfing presents evidence in support of his motion, most notably his
5 own affidavit. In the affidavit Rohlfing indicates the days he treated plaintiff between October
6 16, 2000 and February 4, 2001, which was after plaintiff received abdominal surgery in July 2000
7 and shortly after plaintiff began again to complain of ongoing problems. Rohlfing Decl. at 2:14-
8 5:21. Rohlfing describes the July 2000 surgery, with which he was not involved, as follows:

> On July 16, 2000, [plaintiff] was treated in the Correctional Treatment clinic at High Desert State Prison for complaints of abdominal pain. On July 19, 2000 [plaintiff] continued to complain of abdominal pain; therefore, Dr. Rhee ordered [plaintiff's] transfer from High Desert State Prison to Lassen Community Hospital for further medical treatment. On July 20, 2000, [plaintiff] underwent surgery to remove a ruptured Meckel's diverticulum. . . . I understand that [plaintiff] claims that he was treated . . . for a ruptured appendix, however, [plaintiff's] appendix did not rupture. Rather, [plaintiff's] appendix was removed secondary to the diverticulectomy in order to reduce the risk of post-operative infection. This is standard medical procedure. [Plaintiff] remained hospitalized at Lassen Community Hospital until July 27, 2000.

Id. ¶ 3.

      Rohlfing indicates he did treat plaintiff on multiple occasions following surgery. Specifically, he indicates he examined plaintiff on October 16, 2000 for complaints of abdominal pain, after which he prescribed Tagamet and scheduled plaintiff for a followup. Id. ¶ 4.

      Rohlfing next examined plaintiff on November 13, 2000, for abdominal and lower back pain. During this session he diagnosed plaintiff with *h. pylori* gastritis, a bacterial weakening of the stomach lining resulting in irritation. Rohlfing ordered tests to confirm the diagnosis and prescribed Mylanta and Tylenol, the latter for the back pain. Id. ¶ 5. Rohlfing saw plaintiff again on November 16, 2000, because plaintiff said he continued to be in pain. An exam reconfirmed Rohlfing's suspicions of gastritis and so Rohlfing scheduled plaintiff to come

back the next day when test results were due.  Id. ¶ 6.  On the 17th, when the test results confirmed the gastritis diagnosis, Rohlfing started plaintiff immediately on four separate prescription medications and scheduled him for a two week followup.  Id. ¶ 7.  At the followup on November 28, 2000, Rohlfing examined plaintiff, who said he felt better.  Rohlfing then prescribed Zantac to "provide additional relief," and scheduled plaintiff for another four week followup.  Id. ¶ 8.  Approximately one week later, before the scheduled followup and based on a "man down call," plaintiff was brought to the clinic where Rohlfing was working.  Plaintiff complained of constant abdominal and lower back pain.  Rohlfing was unable to identify any observable objective cause for plaintiff's complaint, so he ordered a complete blood count and urinalysis test.  He also prescribed Tagamet, Tylenol and Robaxin for the stomach and back pain. Id. ¶ 9.  When plaintiff's blood and urinalysis tests came back within normal limits Rohfling determined, in his medical opinion, "that [plaintiff] was most likely continuing to experience residual pain associated with his surgery.  There was no medical indication that [plaintiff] was suffering from a disease process or infection . . . "  Id. ¶ 10.

Between December 5, 2000 and January 30, 2001, Rohlfing was not involved in treating plaintiff.  Id. ¶ 11.

On January 30, 2001, Rohlfing again saw plaintiff, who was complaining of abdominal pain and gastrointestinal bleeding.  Rohlfing examined him but was unable to determine the cause of his discomfort.  During six days of treatment, no other medical professional at the prison was able to diagnose plaintiff's condition.  Id. ¶ 12.

/////
/////
/////
/////
/////
/////

1  On February 4, 2001, plaintiff was transferred to Northern Nevada Medical Center for

2  consultations.  There, according to Rohlfing,

> [i]t was determined that [plaintiff] had an obstruction of the terminal ileum.  The terminal ileum is the most distal portion of the small intestine and is important because it can be affected by numerous infections or inflammatory conditions.  [Plaintiff] underwent an ileocecectomy, a resection of the small intestine and cecum, to remove the obstruction.  Following the procedure, specimens of [plaintiff's] terminal ileum and colon were sent to pathology where it was determined that the inflammation found in the specimens was consistent with Crohn's disease.

Id. ¶ 13 & Ex. A.

Rohlfing goes on to explain:

> Crohn's disease is a chronic inflammatory disease that can affect any portion of the digestive tract.  Crohn's disease is extremely difficult to diagnose because its symptoms mimic the symptoms of other, more common diseases.  Furthermore, Crohn's disease is difficult to diagnose because the symptoms come and go.  Thus, it is not uncommon for a patient suffering from Crohn's disease to seemingly respond in a positive manner to treatment for a medical condition with symptoms similar to Crohn's disease only to have symptoms recur.  The symptoms of Crohn's disease are very similar to the symptoms of *h. pylori* gastritis.  I believe that this explains why [plaintiff] responded positively to the treatment for *h. pylori* gastritis only to experience similar complaints one week later.  It is impossible to ascertain when the symptoms of Crohn's disease will appear in a patient affected with the disease.  There is no cure for Crohn's disease; therefore, a person affected with Crohn's disease will experience the symptoms of the disease for life.  Often, the only way to diagnose Crohn's disease is to have specimens of the digestive tract tested by pathology.
>
> Based upon my review of [plaintiff's] medical records, it is my medical opinion that plaintiff suffers from Crohn's disease.  In my medical opinion, there is no other explanation for plaintiff's medical condition.

Id. ¶¶ 14-15.

In his opposition, plaintiff generally agrees with defendant Rohlfing's summary of Rohlfing's treatment of plaintiff.  In particular, he does not dispute that he received regular examinations and treatment in response to his complaints.  Opp'n at 158-170.  Plaintiff suggests, mostly through the use of rhetorical questions, that defendant Rohlfing should have done more,

or something different than he did, and this is why Rohlfing was deliberately indifferent to plaintiff's serious medical needs. Id. Plaintiff's primary complaint, at this stage, appears to be that Rohlfing's indifference is illustrated by his failure to even check for Crohn's disease – which plaintiff's says is a "common" disease – earlier on. But plaintiff offers no evidence to support his position, and thus fails to establish a factual dispute sufficient to overcome summary judgment. In fact, evidence in the record contradicts his argument,[2] as does defendant Rohfling's expert opinion regarding the difficulty of diagnosing Crohn's disease. Rodriguez v. Pacificare, 980 F.2d 1014, 1019 (5th Cir. 1993) (nothing prevents a party such as a medical doctor from serving as his own expert witness at summary judgment). Plaintiff disagrees with the treatment he was provided, but, as noted above, this is not enough to suggest deliberate indifference. Toguchi, 391 F.3d at 1058. Rohlfing in effect admits that he initially misdiagnosed plaintiff, but this is not enough to establish a genuine issue of material fact as to whether Rohlfing was deliberately indifferent. Estelle, 429 U.S. at 105-06. Plaintiff fails to point to anything indicating Rohlfing purposefully ignored or failed to respond to plaintiff's pain or possible medical need, see McGuckin, 974 F.2d at 1060, or anything suggesting Rohlfing intended plaintiff harm.

     For these reasons, the court finds that there are no facts before the court that could lead a reasonable factfinder to conclude that defendant Rohlfing violated plaintiff's Eighth Amendment rights. Therefore, Rohlfing is entitled to immunity from suit under the doctrine of qualified immunity. In light of the fact that the court is recommending that defendant Rohlfing be granted summary judgment based on qualified immunity, the court need not address the other arguments presented in his motion for summary judgment.

/////

---

[2] Exhibit D attached to defendant Rohlfing's declaration is a collection of medical records from plaintiff's February 2001 stay at the Northern Nevada Medical Center. A review of these documents indicates that several physicians had a difficult time determining the cause of plaintiff's abdominal problems and the role that Crohn's disease played in those problems.

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Defendant Rohlfing's May 19, 2006 motion for summary judgment be granted; and

2. Defendant Rohlfing be dismissed from this action.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 13, 2007.

_____
U.S. MAGISTRATE JUDGE

1
will2291.57